**UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION**

| | |
|---|---|
| WILLIAM JOHNSON, JOSHUA KIRK, and TONI REYNOLDS, individually and on behalf of all others similarly situated, <br><br> Plaintiff, <br><br> vs. <br><br> CORNERSTONE NATIONAL INSURANCE COMPANY <br><br> Defendant. | Case No. 22-CV-04135 |

**PLAINTIFFS' SUPPLEMENTAL MEMORANDUM OF LAW IN FURTHER
SUPPORT OF MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT**

Pursuant to this Court's Order Deferring Consideration of Motion for Preliminary Approval of Class Action Settlement (ECF No. 154), Plaintiffs submit this supplemental memorandum in further support of their Motion for Preliminary Approval of Settlement addressing the eight (8) issues identified by the Court.

1.      **The Costs of Notice and Administration**. Attached hereto as **Exhibit 1** is the Declaration of Settlement Administrator Simpluris Inc. in Support of Plaintiffs' Motion for Preliminary Approval of Class Action Settlement ("Leung Declaration" or "Leung Decl."), declaring, "Based on information provided by the parties to date, Simpluris anticipates notice and administration expenses to be approximately $145,675.00." Leung Decl. ¶ 20. Attached here as **Exhibits 2** and **3** are the updated Long Form Notice and Postcard Notice, respectively, with edits in redline to include this additional information.

1

2. **Class Counsel's Costs and Expenses**. Class Counsel have incurred to date approximately $6,811.00 in costs and expenses in prosecuting this action. The updated Long Form Notice (**Exhibit 2**) now includes the statement that Class Counsel intend to seek reimbursement from the Settlement Fund of their costs and expenses in an amount not to exceed $15,000.00.

3. **Injunctive Relief**. The Settlement Agreement requires Cornerstone to make specific improvements to its data security. SA ¶ 38. These improvements benefit Settlement Class Members, whose Personal Information would otherwise be vulnerable to a repeat Unauthorized Data Disclosure. As required by the Settlement Agreement, Cornerstone provided Plaintiffs' counsel with a written, sworn statement attesting to the fact that since the Unauthorized Data Disclosure it has implemented those improvements. Defendant has also indicated through counsel that it made the following changes after these lawsuits were filed: (1) quarterly training sessions for all staff focused on reinforcing key cybersecurity principles and best practices; (2) requirement of multifactor authentication for enhanced account security; (3) requirement of secure password resets linked to users' registered emails; (4) use of the trusted third-party encryption solution that provides robust encryption and secure file-sharing capabilities to protect critical information during transit; and (5) anti-spoofing protections utilizing SPF and DKIM to prevent email. Cornerstone implemented these changes to respond to the ever-changing cyber-threat environment.

4. **Simpluris Will Perform a NCOA Update and Use Skip-Tracing**. The Leung Declaration explains that prior to sending direct notice by postcard, Simpluris will update the mailing address information for Settlement Class Members via the USPS National Change of Address ("NCOA") database, which provides updated address information for individuals or entities who have moved during the previous four years and filed a change of address with the

USPS. *Id.* ¶ 22. Additionally, all addresses will be processed through the USPS Coding Accuracy Support System ("CASS") and Locatable Address Conversion System ("LACS") to ensure deliverability. *Id.* Moreover, postcards returned to Simpluris by the USPS with a forwarding address will be re-mailed to the new address provided by the USPS, and the Settlement Class Member database will be updated accordingly. *Id.* ¶ 23. Postcards returned to Simpluris by the USPS without forwarding addresses will be processed through a public records address verification search (commonly referred to as "skip tracing") utilizing a wide variety of data sources, including public records, real estate records, electronic directory assistance listings, and other sources, to locate updated email addresses. When new postal addresses are located, the Settlement Class Member database will be updated and the notice remailed. *Id.* ¶ 24. Simpluris expects the notice to reach substantially the entire Settlement Class. *Id.* ¶ 25.

5. **Uncashed Checks Will Be Paid to a *Cy Pres* Recipient**. The parties have met and conferred and have selected the Legal Aid of Western Missouri (*see* https://lawmo.org/) as the *cy pres* recipient to receive any funds that remain in the Settlement Fund due to uncashed paper or digital payments. The Long Form Notice has been updated to identify the *cy pres* recipient. *See* **Exhibit 2**.

6. **The Settlement is Fair, Reasonable and Adequate.** Based on the claims rates in similar data breach settlements in state and federal courts, identified in the following table, Class Counsel estimates the claims rate here will be between 1% and 3%.

| Case Name | Approx. Class Size | Number of Claims | Claims Rate |
|---|---|---|---|
| *Aguallo v. Kemper Corp.*, No. 1:21-cv-01883 (N.D. Ill.), ECF Nos. 45, 46, 51, 53. | 6,148,631 | 11,284 | 0.2% |
| *Heath v. Insurance Technologies Corp.*, No. 3:21-cv-01444-N (N.D. Tex.), ECF Nos. 35, 39, 45, 52. | 4,341,523 | 17,923 | 0.4% |

3

| Case Name | Approx. Class Size | Number of Claims | Claims Rate |
|---|---|---|---|
| *Fraley v. Facebook, Inc.*, No. 3:11-cv-1726-RS, 966 F. Supp. 2d 939 (N.D. Cal. 2013), ECF No. 351. | 150,000,000 | 614,994 | 0.4% |
| *Corona v. Sony Pictures Entertainment, Inc.*, No. 2:14-cv-9600 (C.D. Cal.), ECF Nos. 145-1 at 11 n.8 & 164 at 2. | 435,000 | 3,127 | 0.7 % |
| *In re TikTok, Inc. Consumer Privacy Litig.*, No. 1:20-cv-04699 (N.D. Ill.), ECF Nos. 122, 135, 161, 195, 264. | 89,000,000 | 1,215,541 | 1.4% |
| *In re: Hanna Andersson and Salesforce.com Data Breach Litigation*, No. 3:20-cv-00812-EMC (N.D. Cal.), ECF No. 81 at 1. | 200,108 | 2,802 | 1.4% |
| *Anthem, Inc. Data Breach Litig.*, No. 5:15-md-02617-LHK (N.D. Cal.), ECF No. 1007 at 4 & ECF No. 1007-6 at ¶ 2. | 79,200,000 | 1,380,000 | 1.7% |
| *Cochran et al. v. The Kroger Co.*, No. 5:21-cv-01887 (N.D. Cal.), ECF Nos. 108 at 4-6 and 108-1, ¶ 4. | 3,825,200 | 80,630 | 2.1% |
| *Adlouni v. UCLA Health Systems Auxiliary,* No. BC589243 (Los Angeles Super. Ct.). | 4,500,000 | 108,736 | 2.4% |
| *In re Experian Data Breach Litig.*, No. 8:15-cv-01592-JLS-DFM (C.D. Cal.), ECF Nos. 286-1 at 20 & 309-3 at ¶ 8. | 14,931,074 | 436,006 | 2.9 % |
| *Koenig, et al. v. Lime Crime, Inc.*, No. CV 16-503-PSG (JEMx) (C.D. Cal.), ECF No. 55 at 1 n.16 & 8 n.1. | 107,726 | 3,094 | 2.87% |
| *In re Vizio, Inc. Consumer Priv. Litig.*, No. 8:16-ml-02693-JLS-KES, 1029 WL 12966638 (C.D. Cal. July 31, 2019) | 16,000,000 | 511,537 | 3.0% |
| *Atkinson et al. v. Minted, Inc.*, No. 3:20-cv-03869-VC (N.D. Cal.), ECF No. 71 at 4. | 4,198,490 | 147,268 | 3.5% |
| *Miracle-Pond v. Shutterfly, Inc.*, No. 2019-CH-07050 (Ill. Cir. Ct.). | 950,000 | 49,453 | 5.2% |
| *Gaston, et al., v. FabFitFun*, No. 2:20-cv-09534-RGK (C.D. Cal.), ECF Nos. 45-1 at 3 & 49 at 2. | 441,160 | 23,170 | 5.3 % |
| *Premera Blue Cross Data Breach Litig.*, No. 3:15-md-02633-SI (D. Or.), ECF Nos. 273, 280, 281, 284, 311. | 8,855,764 | 691,870 | 7.81% |
| **Average** | | | **2.58%** |

Also, based on Simpluris' experience in administering similarly structured settlements involving claims for the same damages or recoveries, Simpluris believes "it is reasonable to expect

4

an estimated claims rate in the range of 2-4%." Leung Decl. ¶ 26. Since we are providing direct notice to the entire Settlement Class, which we believe is the best practicable from of notice, we are unaware of any other cost-effective notice of this Settlement structure that can be provided to the Settlement Class members.

While it would be technically possible to mail each Settlement Class member a check rather than have a claim filing process, the cost of mailing checks to all 233,504 Settlement Class Members is estimated to be $405,038.00. Leung Decl. ¶ 27. The Settlement Fund is $525,000.00 and is a reflection of the financial status of the Defendant. Spending $405,038.00 on notice and administration would necessarily deplete a significant amount of the available funds and leave only $119,962.00 for distribution to the Settlement Class, attorneys' fees and costs, and service awards. Even if Class Counsel and Plaintiffs received *nothing* for their efforts, the checks to Settlement Class Members would be only $0.51 each.

The Settlement should be approved as fair, reasonable and adequate even in light of the expected claims rate because the notice program is expected to reach substantially the entire Settlement Class (Leung Decl. ¶ 25) and the Settlement provides compensation to those Settlement Class members who are concerned enough about the Unauthorized Data Disclosure to submit a claim. Given Cornerstone's financial condition and the significant risks Plaintiffs would face at class certification and trial, the Court should approve the Settlement as fair, reasonable and adequate. If the Settlement is not approved, Plaintiffs will continue litigating this matter by taking discovery, deposing lay and expert witnesses, moving for class certification, and preparing for trial, though there is a substantial question regarding Defendant's ability to withstand a large verdict should Plaintiffs prevail. Here, multiple questions regarding the nature and scope of Defendant's liability exist, including varied state and federal laws on data security depending on

5

the data type; expert opinions as to type of security measures Defendant implemented, how they were setup, used, monitored, and updated; and whether Defendant's security measures met statutory requirements and industry standards. Further, establishing a class wide damage model can prove to be challenging in these types of cases, requiring extensive and expensive expert consultation and opinion. Costly forensic expert work would be required, with no guarantee of a positive outcome of the analysis for the Plaintiffs and the Settlement Class Members. Defendant has presented and would continue to present defenses it believes could bar recovery, increasing Plaintiffs' risk of no or limited recovery while causing litigation efforts and expenses to mount.

Defendant would likely oppose class certification and argue—and could succeed in claiming—individualized issues overwhelm common issues as to liability and damages, including what was done with each Class Members' PI. It is also foreseeable Defendant would argue the action is not manageable on a class-wide basis. As a result, there is a risk the case may not be certified. And even if certified, the risk of decertification would always be present.

If this matter was certified and went to trial, it would likely take several more years to reach a final resolution. If not certified, the traditional means for handling claims like the ones at issue here would tax the court system, require a massive expenditure of public and private resources, and, given the relatively low value of Settlement Class Members' individual claims, would make individual resolution impracticable.

Thus, the proposed Settlement is the best means for Settlement Class Members to receive favorable relief in a prompt and efficient manner. If Plaintiffs proceed and the Class is certified, there would still be significant risks. The Class might be de-certified by the Court or Defendant's motion. At trial Defendant could successfully interpose defenses that could cause the jury to reject Plaintiffs' claims or award the Class nominal damages—or none at all. Additionally, trial would

likely include challenging technical computer issues to be presented to and comprehended by a jury. Even in the best possible scenario, Class Members would have to wait years for any compensation.

After careful consideration and arm's-length negotiations, Class Counsel concluded the resulting Settlement consisting of cash payments now to Settlement Class Members who submit claim forms and the improvements to Defendant's data security practices represent a fair and reasonable discount from the potential recovery. The Settlement is being funded by Cornerstone's cyber insurance policy, which is an eroding limits policy. If the case must be litigated to conclusion, the limit will be depleted entirely, greatly magnifying Cornerstone's inability to pay a large verdict. Therefore, the Settlement is the best – and only – way to give the class members a real chance at monetary recovery here. Class Counsel, who have significant experience litigating these types of claims, are of the opinion the Settlement is within the range of a fair, reasonable, and adequate settlement.

Finally, the Long Form Notice has been updated to explain to the Settlement Class Members that Class Counsel arrived at the estimated payments of between approximately $25 and $78 by factoring in the expected claims rate of between 1% and 3%. *See* Exhibit 1.

**7.** **Potential Damages**. The Drivers' Privacy Protection Act, 18 U.S.C. § 2721, *et seq.* ("DPPA") provides the following remedies for its violation: (1) actual damages, not less than statutory liquidated damages in the amount of $2,500; (2) punitive damages; (3) reasonable attorneys' fees and costs; and (4) preliminary and equitable relief as the Court determines to be appropriate. Therefore, the potential total damages under Plaintiffs' DPPA cause of action is $583,760,000. However, the financial practicalities involved with Defendant here negate any possibility of a recovery of anywhere remotely near that amount. Moreover, no DPPA case has

been certified as a class action or tried yet, so there are no comparator cases to look to for evaluating Plaintiffs' likelihood of success at class certification or trial.

"A person is liable under the DPPA if he 'knowingly obtains, discloses or uses personal information, from a motor vehicle record, for a purpose not permitted' by one of the statutory exceptions. § 2724(a)." *Maracich v. Spears*, 570 U.S. 48, 71 (2013). Proof of the elements, however, requires proving, in addition to other elements (1) that Cornerstone knowingly disclosed the driver's license numbers at issue through the design of its website or insurance portal, and (2) that all of the driver's license numbers disclosed are motor vehicle records. The case law surrounding these two propositions is mixed. *See, e.g.*, *Garey v. James S. Farrin, P.C.*, 35 F.4th 917, 927 (4th Cir. 2022) (rejecting DPPA claim where defendants obtained driver's license information from law enforcement car accident reports, which contained some information copied from motorists' licenses); *Gaston v. LexisNexis Risk Solutions, Inc.*, 483 F. Supp. 3d 318, 336-37 (W.D.N.C. 2020) (holding accident reports are motor vehicle records from a DMV); *Whitaker v. Appriss, Inc.*, 266 F. Supp. 3d 1103, 1110 (N.D. Ind. 2017) ("When the holder of a driver's license hands over her personal information to an entity other than a DMV, even when that information is printed onto a driver's license, the DPPA doesn't protect it."); *O'Brien v. Quad Six, Inc.*, 219 F. Supp. 2d 933, 935 (N.D. Ill. 2002) ( "[The DPPA] seeks to control dissemination of information collected using the coercive power of the state. It does not regulate information freely given by consumers to private businesses […]."). Plaintiffs' ability to recover would depend on both unknown factual determinations and also hotly contested legal propositions.

Plaintiffs' negligence and negligence *per se* claims are difficult to value. To date, there have been no data breach cases tried to verdict, and only a handful of cases have achieved class certification. Moreover, Defendant would likely argue Plaintiffs are unable to establish causation

8

related to the PII being used by identity thieves and potentially that individualized issues predominate in determining whether each putative class member's damages might stem from a prior data breach. Also, Defendant would likely argue any damages claimed are speculative, recovery may be limited to actual damages under some state laws, and that the economic loss rule should apply. Defendant would also likely argue that the information at issue was not sensitive and could not lead to, by itself and as a result of this Data Disclosure Incident, any tangible harm or identity theft.

The California Consumer Privacy Act, Cal. Civ. Code § 1798.100, *et seq*. ("CCPA") provides statutory damages that range from $100 to $750 per individual (Cal. Civ. Code § 1798.150(a)(1)(A)) or individual out of pocket losses, whichever is greater. Therefore, Class Counsel estimate the maximum damages available to the California Subclass—if certified and proved on a subclass-wide basis—to be approximately $168,525,000 ($750 x 224,700). The CCPA is a relatively new statute, having gone into effect on January 1, 2020. There are several potential obstacles to recovery. First, "it is not clear whether the presumption against extraterritoriality applies to the CCPA." *In re Canon U.S.A. Data Breach Litig*., No. 20-CV-6239 (AMD) (SJB), 2022 WL 22248656, at *13 (E.D.N.Y. Mar. 15, 2022). Cornerstone will likely argue that the CCPA doesn't apply to it because it is a Missouri Corporation, it is not licensed to do business in California and therefore did not have a business relationship with Plaintiffs or California Subclass members, the wrongful conduct did not occur in California, and it did not engage in any conduct in California. Cornerstone will likely also argue that the CCPA does not apply to it because it does meet the definition of a "business" as its revenues do not exceed $25,000,000 per year, it does not buy, sell or share the personal information of 100,000 or more consumers or households, and it

9

does not derive 50 percent or more of its revenues from selling or sharing consumers' personal information. Cal. Civ. Code § 1798.140(d)(1).

Plaintiffs' claim under California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, *et seq*. ("UCL") primarily adds injunctive relief value to this action since the only remedies available under that claim are restitution and in injunctive relief. Defendant would likely argue that the California Subclass members do not have a claim for restitution since they did not pay anything to Defendant for insurance services or otherwise. Thus, the remedy of restitution is inapplicable here.[1]

Given the uncertainty of the potential damages in this case, a better indicator of the Settlement's fairness, reasonableness and adequacy is its comparison to other, similar data breach settlements. While it is difficult to directly compare recoveries in data breach settlements due to differences in the sensitivity of information, facts, and claims at issue in each case, a simple amount recovered per Class Member demonstrates this Settlement is an excellent recovery compared to other data breach/incident litigation settlements, such as:

| CASE TITLE | SETTLEMENT AMOUNT | NO. OF CLASS MEMBERS | $ PER CLASS MEMBER |
|---|---|---|---|
| *In re Target Corp. Customer Data Breach Security, Litig.*, MDL No. 2522 (D. Minn.). | $10M | 97.5M | $0.10 |

---

[1] Moreover, as this Court already recognized in its Order Granting in Part, Denying in Part, and Deferring in Part Defendants' Motions to Dismiss (ECF No. 119 at 14), "California courts presume statutes do not apply 'with respect to occurrences outside the state, unless such intention is clearly expressed or reasonably to be inferred from the language of the act or from its purpose, subject matter or history.'" *Sullivan v. Oracle Corp*., 254 P.3d 237, 248 (Cal. 2011) (cleaned up). "Neither the language of the UCL nor its legislative history provides any basis for concluding the Legislature intended the UCL to operate extraterritorially. Accordingly, the presumption against extraterritoriality applies to the UCL in full force." *Id*. Cornerstone would likely argue that it is a Missouri Corporation, it is not licensed to do business in California and therefore did not have a business relationship with Plaintiffs or California Subclass members, the wrongful conduct did not occur in California, and it did not engage in any conduct in California, and that therefore the UCL cannot be applied to it.

| | | | |
|---|---|---|---|
| *Fraley v. Facebook, Inc.*, 3:11-cv-1726-RS, 966 F. Supp. 2d 939 (N.D. Cal. 2013), ECF No. 351. | $20M | 150M | $0.13 |
| *In re Ashley Madison Customer Data Security Breach Litig.*, No. 4:15-md-02669-JAR (E.D. Mo.), ECF Nos. 344, 383, 384, 389. | $11.2M | 37M | $0.30 |
| *Adlouni v. UCLA Health Systems Auxiliary, et al.*, No. BC 589243 (Los Angeles Super. Ct.). | $2M | 4.5M | $0.44 |
| *In re Yahoo! Inc. Customer Data Breach Litig.*, No. 5:16-MD-02752-LHK (N.D. Cal.). | $117.5M | 194M | $0.61 |
| *In re TikTok, Inc. Consumer Priv. Litig.*, No. 1:30-cv-04699 (N.D. Ill.), ECF Nos. 122, 135, 161, 195, 264. | $92M | 89M | $1.03 |
| *In re Vizio, Inc. Consumer Priv. Litig.*, No. 8:16-ml-02693-JLS-KES, 2019 WL 12966638 (C.D. Cal. July 31, 2019). | $17M | 16M | $1.06 |
| *Hajny v. Volkswagen Group of America, Inc.*, No. C22-01841 (Contra Costa Super. Ct.). | $3.5M | 3.17M | $1.10 |
| *Atkinson, et al. v. Minted, Inc.*, No. 3:20-cv-03869-VC (C.D. Cal.). | $5M | 4.1M | $1.22 |
| *Cochran et al. v. The Kroger Co.*, No. 5:21-cv-01887 (N.D. Cal.). | $5M | 3.82M | $1.31 |
| *In re Capital One Consumer Data Security Breach, Litig.*, No. 1:19-md-02915-AJT-JFA (E.D. Va.). | $190M | 98M | $1.93 |
| **Case at Bar** | **$525,000** | **233,504** | **$2.25** |
| *Heath v. Insurance Technologies Corp.*, 3:21-cv-01444-N (N.D. Tex.) ECF Nos. 35, 39, 45, 52. | $11M | 4.3M | $2.53 |
| *In re Equifax Inc. Data Security Breach Litig.*, No. 1:17-md-02800-TWT (N.D. Ga.). | $380.5M | >147M | $2.59 |
| *In re Premera Blue Cross Customer Data Security Breach Litig.*, No. 3:15-md-2633-SI (D. Or.). | $32M | 8.86M | $3.61 |
| *Winstead v. ComplyRight, Inc.*, No. 1:18-CV-4990 (N.D. Ill.). | $3.025M | 665,689 | $4.54 |

8. **Defendants Have Complied with the CAFA Notification Requirements**. The Class Action Fairness Act, 28 U.S.C. § 1715(b) requires Defendant Cornerstone to give notice of the proposed settlement to "the appropriate State official of each State in which a class member resides and the appropriate Federal official." On February 19, 2025, Simpluris caused this notice to be mailed to the appropriate state and federal officials. Leung Decl. ¶ 21(a).

11

\* \* \*

For all of the reasons provided above and in Plaintiffs moving papers, Plaintiffs respectfully

request the Court grant preliminary approval to the Settlement.

Dated: March 4, 2025                 Respectfully submitted,

*/s/ Kate M. Baxter-Kauf*
Kate M. Baxter-Kauf (MN #0392037)
kmbaxter-kauf@locklaw.com
Karen Hanson Riebel (MN #0219770)
khriebel@locklaw.com
Maureen Kane Berg (MN # 033344X)
mkberg@locklaw.com
**LOCKRIDGE GRINDAL NAUEN PLLP**
100 Washington Avenue South, Suite 2200
Minneapolis, MN 55401
Tel.: (612) 339-6900
Fax: (612) 339-0981

Rachele R. Byrd (*pro hac vice*)
byrd@whafh.com
Alex Tramontano (*pro hac vice*)
tramontano@whafh.com
**WOLF HALDENSTEIN ADLER**
**FREEMAN & HERZ LLP**
750 B Street, Suite 1820
San Diego, CA 9211
Tel.: (619) 239-4599
Fax: (619) 234-4599

*Interim Co-Lead Class Counsel*

Maureen M. Brady (MO # 57800)
mbrady@mcshanebradylaw.com
**MCSHANE & BRADY, LLC**
1656 Washington, Ste. 120
Kansas City, MO 64108
Tel.: (816) 888-8010
Fax: (816) 332-6295

*Interim Liaison Class Counsel*

12

Gayle M. Blatt (pro hac vice)
gmb@cglaw.com
P. Camille Guerra (pro hac vice)
camille@cglaw.com
**CASEY GERRY SCHENK FRANCAVILLA
BLATT & PENFIELD, LLP**
110 Laurel Street
San Diego, CA 92101
Tel.: (619) 238-1811
Fax: (619) 544-9232

M. Anderson Berry (pro hac vice)
aberry@justice4you.com
Gregory Haroutunian (pro hac vice)
gharoutunian@justice4you.com
**CLAYEO C. ARNOLD,
A PROFESSIONAL LAW CORP.**
865 Howe Avenue
Sacramento, CA 95825
Tel.: (916) 239-4778
Fax: (916) 924-1829

*Proposed Class Counsel*

## CERTIFICATE OF SERVICE

I hereby certify that on March 4, 2025, a true and correct copy of the foregoing was electronically filed with the Clerk of Court using CM/ECF. Copies of the foregoing document will be served upon interested counsel via transmission of Notices of Electronic Filing generated by CM/ECF.

*/s/ Kate M. Baxter-Kauf*
Kate M. Baxter-Kauf (MN #0392037)
**LOCKRIDGE GRINDAL NAUEN PLLP**
kmbaxter-kauf@locklaw.com
100 Washington Avenue South, Suite 2200
Minneapolis, MN 55401
Tel.: (612) 339-6900
Fax: (612) 339-0981

*Interim Co-Lead Class Counsel*

14