| | |
|---|---|
| WILLIAM JOHNSON, JOSHUA KIRK, and TONI REYNOLDS, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>CORNERSTONE NATIONAL INSURANCE COMPANY<br><br>Defendant. | Case No. 22-CV-04135-WJE |

**MOTION AND SUGGESTIONS IN SUPPORT OF PLAINTIFFS' MOTION
FOR FINAL APPROVAL OF SETTLEMENT**

## TABLE OF CONTENTS

I. INTRODUCTION ............................................................................................................. 1

II. NATURE OF THE DISPUTE AND TERMS OF THE SETTLEMENT ........................... 1

    A. Nature of The Dispute and Procedural History ............................................................ 1

    B. Terms of the Settlement ............................................................................................... 3

III. SETTLEMENT ADMINISTRATION AND NOTICE ....................................................... 4

IV. CERTIFICATION OF THE CLASS FOR SETTLEMENT PURPOSES .......................... 5

V. THE SETTLEMENT IS PRESUMPTIVELY FAIR, ADEQUATE AND REASONABLE 8

    C. The Class Representatives and Class Counsel Have Adequately Represented the Class and the Settlement Agreement Was Negotiated at Arm's-Length – Rule 23(e)(2)(A-B) .................................................................................................................. 9

    D. The Relief Provided for the Class is Adequate – Rule 23(e)(2)(C) ........................ 10

        1. The Costs, Risks, and Delay of Trial and Appeal – Rule (e)(2)(C)(i) .............. 10

        2. The Effectiveness of Any Proposed Method of Distributing Relief to the Class, Including the Method of Processing Class-Member Claims - Rule 23(e)(2)(C)(ii) .................................................................................................. 10

        3. The Terms of Any Proposed Award of Attorneys' Fees, Including Timing of Payment - Rule 23(e)(2)(C)(ii) ............................................................................ 11

        4. Any Agreement Required to be Identified Under Rule 23(e)(3) ...................... 12

        5. The Proposal Treats Class Members Equitably Relative to Each Other—Rule 23(e)(2)(D) ......................................................................................................... 12

VI. Rule 23(e)(2) certification for settlement purposes is appropriate in this case ................. 12

VII. CONCLUSION .................................................................................................................. 14

## TABLE OF AUTHORITIES

**Cases**                                                                                                                                    **Page(s)**

*Amchem Prods., Inc. v. Windsor*,
  521 U.S. 591 (1997) ................................................................................................................. 7,12

*In re Uponor, Inc., F1807 Plumbing Fittings Prods. Liab. Litig.*,
  716 F.3d 1057 (8th Cir. 2013) .......................................................................................................... 9

*In re Zurn Pex Plumbing Products Liab. Litig.*,
  2013 WL 716088 (D. Minn. Feb. 27, 2013) ..................................................................................... 9

*Justine Realty Co. v. American Nat. Can Co.*,
  976 F.2d 385 (8th Cir. 1992) ............................................................................................................. 8

*White v. Nat'l Football League*,
  822 F.Supp. 1389 (D. Minn. 1993) ................................................................................................... 8

**Statutes**

18 U.S.C. § 2721 ................................................................................................................................ 2, 5

**Rules**

Fed. R. Civ. P. 23(e) ..................................................................................................................... *passim*

## I. INTRODUCTION

Pursuant to Federal Rule of Civil Procedure 23(e), Plaintiffs respectfully move for an order granting final approval of the proposed settlement as described herein. Plaintiffs submit these Suggestions in support of their Motion for Final Approval of a proposed class action settlement.

On January 6, 2025, Plaintiffs filed their Motion and Memorandum of Law in Support for Preliminary Approval of Settlement. ECF No. 150. In its Order dated February 11, 2025, this Court requested supplemental briefing as to various aspects of the Settlement Agreement and motion for preliminary approval. ECF No. 154. On March 4, 2025, the Plaintiffs filed their Supplemental Memorandum of Law in Further Support of their Motion for Preliminary Approval. ECF No. 155. This Court granted Plaintiffs' Motion for Preliminary Approval on March 14, 2025. ECF No. 156. The claims administrator, Simpluris, Inc. ("Simpluris"), initiated the direct mail notice protocol, as well as the establishment of the Settlement Website and toll-free telephone line on April 11, 2025, which informed the Class Members how to file a claim, opt out and/or file an objection to the settlement. Declaration of Christopher Leung of Settlement Administrator Simpluris, Inc. Regarding Notice and Administration ("Leung Decl."), ¶¶ 6, 9, 11.

Class Counsel is now in a position to report the results of the notice process to the Court and request entry of an Order Granting Final Approval of the Class Settlement.

## II. NATURE OF THE DISPUTE AND TERMS OF THE SETTLEMENT

### A. Nature of The Dispute and Procedural History

This matter concerns two consolidated putative class actions arising out of a data disclosure incident which occurred between, at the latest, November 29, 2021, and July 6, 2022, at Defendant Cornerstone National Insurance Co. ("Cornerstone" or "Defendant"), an automobile and homeowners' insurance provider, that targeted the information of consumers or potential customers whose information was available upon request via an agent portal (the "Unauthorized

1

Data Disclosure"). The putative class action lawsuits were filed by Plaintiffs William Johnson, Joshua Kirk, and Toni Reynolds in the United States District Court for the Western District of Missouri in September 2022.[1] Plaintiffs allege that the Unauthorized Data Disclosure resulted in unauthorized access to sensitive data belonging to Plaintiffs and approximately 233,504 members of the Settlement Class, including driver's license numbers, dates of birth and other sensitive information (collectively, "Personal Information" or "PI"). Plaintiffs and the Class are now faced with the present and substantial risk of imminent harm caused by the compromise of their Personal Information. On March 6, 2023, the two cases were consolidated, and Interim Co-Lead Class Counsel were appointed. ECF No. 29.

On November 12, 2023, Plaintiffs filed a Consolidated Class Action Complaint (ECF No. 42) alleging violation of the Driver's Privacy Protection Act, 18 U.S.C. § 2721, common law claims for negligence and negligence *per se*, and violations of California consumer protection statutes along with requests for injunctive and declaratory relief.[2] Defendant Cornerstone denies all liability and contends no one has suffered a legally cognizable injury from the Unauthorized Data Disclosure.

Plaintiffs' counsel—Kate M. Baxter-Kauf of Lockridge Grindal Nauen P.L.L.P.; Rachele R. Byrd of Wolf Haldenstein Adler Freeman & Herz LLP; M. Anderson Berry of Clayeo C. Arnold,

---

[1] *See* ECF No. 1 in the above-captioned action as well as ECF No. 1 in the associated case, *Reynolds v. Cornerstone National Insurance Co.*, No. 2:22-cv-4140 (W.D. Mo.).

[2] The Consolidated Class Action Complaint was filed against Cornerstone, as well as Accredited Resource Insurance Agency, LLC ("Accredited"); James Insurance Agency, Inc. ("James"); Reed-Williams Insurance Agency, Inc. ("Reed-Wiliams"); and Guidewire Software Inc. ("Guidewire"). ECF No. 42. The court granted Accredited' s motion to dismiss (ECF No. 118), granted in part, deferred in part Guidewire's motion to dismiss (ECF No. 119), and granted in part, denied in part, and deferred in part Reed-Willliams's motion to dismiss (ECF No. 119). Plaintiffs dismissed James in February of 2024 (ECF No. 99), Defendant Reed-Williams in May 2024 (ECF No. 129), and Defendant Guidewire in November 2024 (ECF No. 145).

A Professional Corp.; Gayle M. Blatt of Casey Gerry Schenk Francavilla Blatt, LLP; and Maureen M. Brady of McShane & Brady, LLC—have served as counsel for Plaintiffs from the early stages of the litigation.

**B. Terms of the Settlement**

Under the Settlement Agreement, Defendant agrees to pay the Settlement Amount of $525,000.00. Settlement Agreement ("SA"), ECF No. 150-2 ¶ 39. The Settlement Amount is inclusive of Settlement Class recovery amounts, costs of notice and administration, and service awards for the Class Representatives and attorneys' fees and expenses as approved by the Court. Class Members submitted a Claim Form[3] to receive a cash payment.

The operative terms of the proposed Settlement are:

→ Defendant will receive a release of the claims asserted in the Consolidated Complaint.

→ Class Members that opt out will preserve any claims against Defendant.

→ Class Members who filed a valid claim form will receive a pro-rata distribution of the net settlement proceeds after payment of the claims administrator's fees, attorneys' fees and expenses, and service awards.

→ Class Counsel seek attorneys' fees of $174,982.50 and reimbursement of out-of-pocket expense in the amount of $11,134.96. ECF No. 160 ¶¶ 1-2.; and

→ In recognition of their service to the Class, the Class Representatives each seek approval of a service award in the amount of $2,000.00. *Id.* ¶ 3.

The Settlement Agreement also provides for significant business practice commitments. SA ¶ 38. These commitments include requiring password resets for all agent accounts and implementing additional technical safeguards including additional spam filters, firewalls and

---

[3] The Claim Form is attached to the Settlement Agreement as Exhibit A.

antivirus software system-wide, as well as providing additional staff and agent training on identifying unauthorized access. *Id*. As required by the Settlement Agreement, Cornerstone provided Plaintiffs' counsel with a written, sworn statement attesting to the fact that since the Unauthorized Data Disclosure it has implemented those improvements. Defendant has also indicated through counsel that it made the following changes after these lawsuits were filed: (1) quarterly training sessions for all staff focused on reinforcing key cybersecurity principles and best practices; (2) requirement of multifactor authentication for enhanced account security; (3) requirement of secure password resets linked to users' registered emails; (4) use of the trusted third-party encryption solution that provides robust encryption and secure file-sharing capabilities to protect critical information during transit; and (5) anti-spoofing protections utilizing SPF and DKIM to prevent email. Cornerstone implemented these changes to respond to the ever-changing cyber-threat environment. ECF No. 155 ¶ 3.

### III.  SETTLEMENT ADMINISTRATION AND NOTICE

As described in the Motion for Preliminary Approval, the administration and notice procedure was specifically tailored in order to provide every putative Class Member with direct written notice of the Settlement. The detailed notice paperwork fully described the Settlement terms and provided information allowing Class Members to opt out, object, or obtain additional information directly from Class Counsel, among other things. In compliance with the Settlement Agreement and consistent with the Court's Preliminary Approval Order, Defendant provided the Claims Administrator with a mailing list of the individuals identified as Class Members ("Class List") and worked extensively to obtain and verify this information. The Class List included names and last known addresses of all Class Members. On April 11, 2025, the Claims Administrator mailed the Notices. Leung Decl., ¶ 6. After the initial mailing of 233,169 paper notices, USPS returned 28,486 Notices to the Claims Administrator. *Id.*, ¶ 7. Through additional searches, the

Claims Administrator located updated addresses until ultimately only 2,219 Notices remained undeliverable. *Id.* After the conclusion of the opt-out and objections periods, the Claims Administrator received only three requests for exclusion and no objections to the Settlement. *Id.* at ¶¶ 16, 18.

IV. **CERTIFICATION OF THE CLASS FOR SETTLEMENT PURPOSES**

Regarding the settlement of class actions, Rule 23(e) states:

The claims, issues, or defenses of a certified class—or a class proposed to be certified for purposes of settlement—may be settled, voluntarily dismissed, or compromised only with the court's approval.

A class action settlement must be approved by the Court to be effective, pursuant to Rule 23(e)(B)(ii). The Settlement Class meets the Rule 23(a) factors in that:

1. The Settlement Class is so numerous that joinder of all members is impracticable. The class consists of approximately 233,504 members. *See* SA ¶ 58.

2. There are questions of law or fact common to the Settlement Class. These questions include whether Defendant's actions constitute a violation of the Driver's Privacy Protection Act, 18 U.S.C. § 2721, common law claims for negligence and negligence *per se*, and violations of California consumer protection statutes.

3. The Representative Plaintiffs' claims are typical of the claims of the Settlement Class. The Representative Plaintiffs allege that their personal information was accessed and disclosed during the Unauthorized Data Disclosure. The Representative Plaintiffs seek recovery for the harm caused by the alleged disclosure of their personal information as well as that of the Settlement Class Members, and attorneys' fees and costs.

4. The Representative Plaintiffs will fairly and adequately protect the interests of the Settlement Class. The Representative Plaintiffs have been actively involved in this

5

litigation and have no interest adverse to that of the Settlement Class. Further, as explained below, the Settlement Class is represented by attorneys who have extensive experience in class litigation and who have been approved as adequate counsel in data breach/disclosure and other class actions.

This action also satisfies the requirements of Rule 23(b) in that, for settlement purposes only: (1) questions of law or fact common to members of the Settlement Class predominate over any questions affecting individual members; and (2) a class action is superior to other available methods for the fair and efficient adjudication of the controversy. This is true in this case because the value of the claims of harm of each individual Settlement Class Member are relatively low when contrasted with the cost of litigating them individually, and are therefore too small to justify individual actions.

However, there are four additional factors that must be considered in order for the Court to make the above determination under Rule 23(b)(3): (1) "the class members' interests in individually controlling the prosecution or defense of separate actions;" (2) "the extent and nature of any litigation concerning the controversy already begun by or against class members;" (3) "the desirability or undesirability of concentrating the litigation of the claims in the particular forum;" and (4) "the likely difficulties in managing a class action." The Settlement Class meets these four factors for the following reasons:

1. The Settlement Class Members likely have no interest in individually controlling the prosecution or defense of separate actions. The Settlement Class Members' interests are better served by maintaining a class action because if each were to pursue their claims against Cornerstone individually, they would each need to

provide nearly the same, if not identical, legal factual arguments and evidence. The cost of doing so would also be particularly burdensome, thus this factor is met.

2. This Litigation has been extensive. Counsel has vigorously litigated the causes of action, including: (1) conducting thorough pre-suit investigation which resulted in the preparation of detailed initial complaints; (2) filing a Consolidated Complaint against all named defendants, including Cornerstone; (3) participating in two mediations; (4) engaging in extensive settlement discussions; (5) soliciting and evaluating multiple proposals for the notice and administration of this Settlement; and (6) negotiating and preparing the Settlement Agreement and attached exhibits. Given the time, dedication, and work allotted to the case, this factor weighs in favor of a class action being superior. In addition, Plaintiffs are not aware of any other litigation filed by any other members of the class.

3. It would be desirable to concentrate the litigation of the claims in this particular forum. As mentioned previously, two class actions were filed against Cornerstone in this Court and were consolidated. Concentrating the litigation of the claims provides expediency and avoids duplicative litigation. Cornerstone is located in this District and thus it is appropriate for the cases to have been consolidated before this Court.

4. The Court does not need to consider the manageability issues in a settlement context. *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997).

After the Court's order preliminarily approving the Settlement, notice was provided to the class by first mailing on April 11, 2025, and the website was established to provide information and allow online claim filing, www.cornerstonedatasettlement.com. Leung Decl. ¶ 9. As of the

date of this filing no Class Members have objected to the Settlement, and only three Class Members have excluded themselves from the case despite having a period of 120 days within which to have done so. *Id.* ¶¶ 14, 16.

To date, 10,908 Class Members have submitted claims. *Id.* ¶ 12.

With steps 1 and 2 of the approval process complete, the Court now must decide whether to give final approval to the Settlement after accounting for all information obtained during the approval process. Having provided notice and receiving very few exclusions and no complaints or objections, the Court can now grant final approval of the Settlement.

V. **THE SETTLEMENT IS PRESUMPTIVELY FAIR, ADEQUATE AND REASONABLE**

"The policy in federal court favoring the voluntary resolution of litigation through settlement is particularly strong in the class action context." *White v. Nat'l Football League*, 822 F.Supp. 1389, 1416 (D. Minn. 1993). However, Courts must review class action settlements to ensure that they are "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2).

Courts exercise discretion when approving class action settlements under Rule 23(e). There is strong judicial and public policy favoring the voluntary conciliation and settlement of class action litigation. *See Justine Realty Co. v. American Nat. Can Co.*, 976 F.2d 385, 391 (8th Cir. 1992). This Court has the responsibility to review the Settlement Agreement to determine whether its terms are presumptively fair, adequate and reasonable. In determining whether a settlement is fair, adequate and reasonable, the following factors found in Rule 23(e)(2) are taken into account:

> (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other.

8

Fed. R. Civ. Proc. 23(e)(2) requires that for a settlement to bind the class, the Court must hold a hearing and find that the proposed settlement is fair, reasonable, and adequate after considering the Rule 23(e)(2) factors. As shown below, each of these factors weigh in favor of approving the proposed Settlement.

### C. The Class Representatives and Class Counsel Have Adequately Represented the Class and the Settlement Agreement Was Negotiated at Arm's-Length – Rule 23(e)(2)(A-B)

As has been recognized, there is a presumption of reasonableness when a Settlement Agreement is produced by arm's-length negotiations conducted by substantially experienced and capable counsel. *See In re Zurn Pex Plumbing Products Liab. Litig.*, No. 08-MDL-1958, 2013 WL 716088, at *6 (D. Minn. Feb. 27, 2013) (stating that "[t]he settlement here is presumptively valid, given the arm's-length negotiations supervised by Magistrate Judge Leung, the extensive discovery conducted . . . , the substantial experience of both plaintiffs and defense attorneys, and the absence of even a single objection to the settlement."). *See also In re Uponor, Inc., F1807 Plumbing Fittings Prods. Liab. Litig.*, 716 F.3d 1057, 1063 (8th Cir. 2013) ("A settlement agreement is 'presumptively valid.'") (citation omitted).

Here, the Settlement is a product of extensive arm's-length negotiations conducted by experienced counsel and a well-respected mediator, each of whom are knowledgeable in complex consumer class actions, including data breach class actions. The Settlement reflects the progress of countless months of briefing, negotiations, other technical aspects of the litigation and the Defendant's financial condition. This includes two mediation sessions in August 2023 and April 2024 with retired Circuit Judge and Mediator Jay Daugherty, multiple follow up communications with Judge Daugherty in the ongoing mediation process, months of subsequent discussions and hard-fought negotiations to reach an agreement on the terms of the Settlement. ECF No. 150.

Counsel's experience in representing plaintiffs in consumer class actions, including data breach class actions, afforded them the ability to assess the strengths and weaknesses of this case. The experience of the attorneys involved demonstrate that the Settlement Class Members were well represented at the bargaining table.

### D. The Relief Provided for the Class is Adequate – Rule 23(e)(2)(C)

#### 1. The Costs, Risks, and Delay of Trial and Appeal – Rule (e)(2)(C)(i)

Class actions, like the instant action dealing with data security issues, have a reputation for being particularly complex. Absent the Settlement Agreement, Plaintiffs would have to overcome many hurdles, including, but not limited to, summary judgment, prevailing at trial, possibly appeal and the ability of the Defendant to withstand a judgment in this matter. Additionally, Plaintiffs would need to be successful in certifying and maintaining the action as a class action. Instead, the Parties were able to craft a Settlement Agreement that provides monetary benefits to the Settlement Class, includes Cornerstone's commitment to enhance and change security practices, and avoids the expenses of ongoing litigation.

By negotiating a Settlement Agreement, Plaintiffs have also reduced their risk and delay of a recovery. Although Plaintiffs are confident their claims have merit, proceeding through trial would create a substantial risk and delay. Advancing the case to trial would likely take years and would involve numerous fact witnesses, experts, and the introduction of voluminous documentary evidence. By settling now, Plaintiffs avoid the risks associated with continuing litigation and guarantee quicker recovery.

#### 2. The Effectiveness of Any Proposed Method of Distributing Relief to the Class, Including the Method of Processing Class-Member Claims - Rule 23(e)(2)(C)(ii)

Here, the plan of allocation is straightforward and the result of extensive negotiation between highly competent counsel, with the input of a mediator. To receive the benefits outlined

above, a Settlement Class Member needed only fill out the simple Claim Form and submit it to the Settlement Administrator, either online, or by mail, postmarked on or before the Claims Deadline, July 12, 2025. *See* SA ¶ 41. The Net Settlement Fund shall be distributed to Settlement Class Members who file valid claims on a *pro rata* basis. *Id*. The Settlement also provides injunctive relief in the form of data security enhancements to better protect the Settlement Class's PI. *Id.* ¶ 38.

All claims will be processed by the Settlement Administrator, Simpluris, with the oversight of Class Counsel. The Court approved the parties' notice plan at the preliminary approval stage. *See* ECF No. 156, ¶¶ 9–12. Notices to 233,169 Class Members. Leung Decl. ¶ 6. Of those, 28,486 notices were returned as undeliverable, and Simpluris re-mailed 26,267 notices at least once. *Id.* ¶ 9. As described herein, claims administration and notification procedures were robust and employed the best mechanisms to thoroughly identify and notify Class Members at the earliest possible juncture, providing them with sufficient time to participate, opt out, or object to the Settlement. The positive Class Member response to the Settlement is a testament to its fairness and adequacy and weighs in favor of final approval. No Class Member has objected to the Settlement and only three have excluded themselves from the Settlement. *Id*. ¶¶ 16, 18. Here, the absence of any objections and only three opt-outs (representing a mere 0.01% of the Class) from the Settlement Class is significant in determining whether the proposed Settlement is reasonable to the Settlement Class as a whole. This factor also favors approval of the settlement.

### 3. The Terms of Any Proposed Award of Attorneys' Fees, Including Timing of Payment - Rule 23(e)(2)(C)(ii)

As discussed above, Plaintiffs' Counsel requested an award of attorneys' fees not to exceed 33.33% of the Settlement Amount ($174,982.50) and reasonable litigation costs. ECF No. 160.

This request is well within the range of reasonableness considering the benefits made available under the Settlement and the years of attorney work and costs that have accrued.

The Settlement provides potential direct monetary benefits to the Settlement Class. These benefits were made available through a reasonable claims process which this Court already approved. ECF No. 156.

All Class Members have been informed in the notice that Class Counsel will seek up to $174,982.50 in attorneys' fees and reasonable litigation costs. Leung Decl. ¶¶ 6-8; SA Exs. B (Short Notice), C (Long Notice).

### 4. Any Agreement Required to be Identified Under Rule 23(e)(3)

Other than the Settlement Agreement, ECF 150-2, there are no such agreements. As such, this factor supports final approval.

### 5. The Proposal Treats Class Members Equitably Relative to Each Other—Rule 23(e)(2)(D)

No person or group of people are treated more advantageously than another in this Settlement. *See* SA generally. And the release was narrowly-tailored so that no person or group of persons is treated more advantageously than another. ECF 150-2 (SA) ¶¶ 43, 27-29.

## VI. Rule 23(e)(2) certification for settlement purposes is appropriate in this case

When considering a settlement, the Court should confirm that there is sufficient basis for class certification. That said, the same "rigorous analysis" required to certify a litigated class "simply does not apply to settlement approvals." *Keil,* 862 F.3d at 694; *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 617–18 (1997).

Here, the Court certified the Class for settlement purposes in its Preliminary Approval Order. *See* ECF No. 156 ¶ 7. Notice has been sent to the Settlement Class. There have been no objections to class certification and only three opt-outs, therefore nothing has changed to affect the

Court's preliminary certification decision. Leung Decl. ¶¶ 14, 16. As such, final class certification is appropriate.

### 1. The Court Should Approve the Proposed Service Awards.

The Settlement allows for a $2,000 service award for each of the three class representatives. As described above, they have more than fulfilled their duties as Class Representatives as shown by their commitment to this case through their help reviewing the facts of the case, reviewing pleadings, staying apprised of the litigation and the settlement negotiations, and review of the Settlement Agreement on behalf of the Settlement Class. *See* ECF No. 161 (Plaintiffs' Suggestions in Support of Motion for an Award of Attorneys' Fees, Reimbursement of Expenses, and Service Award for the Settlement Class Representatives) at 13-14. This service awards represent approximately 0.003% of the common settlement benefit.[4] Given the importance of the assistance provided by the Class Representatives here, the requested service awards are fair and reasonable and should be approved.

### 2. NO OBJECTIONS HAVE BEEN ASSERTED TO THE SETTLEMENT

The reaction of the Class to the Settlement has been positive. As outlined above, no Class Members have filed objections to the Settlement even though they were given 120 days to do so.

---

[4] *See Husein v. Bravo Brio Restaurant Group*, No. 16-cv-00435-DW, Doc. 48 (W.D. Mo. December 13, 2017) (approving service award to two named plaintiffs and early opt in of $17,500 each); *Hermsen v. City of Kansas City*, No. 11-cv-753-BP, Doc. 115 (W.D. Mo. Sept. 22, 2014) (approving service award to named plaintiff in the amount of $42,282.12, representing 3% of the common fund); *Wolfert v. UnitedHealth Group, Inc.,* 2009 WL 10694829, at *4 (E.D. Mo. Aug. 21, 2009) (approving incentive award of $30,000); *Matheson v. T-Bone Rest.*, LLC, 2011 WL 6268216, at *9 (S.D.N.Y. Dec. 13, 2011) (approving $45,000 service award to named plaintiff after two-and-a-half years of litigation); *Mentor v. Imperial Parking Sys., Inc.*, 2010 WL 5129068, at *5 (S.D.N.Y. Dec. 15, 2010) (approving $40,000 service award to named plaintiff after five years of litigation); *Willix v. Healthfirst, Inc.*, 2011 WL 754862, at *7 (E.D.N.Y. Feb. 18, 2011) (approving $30,000 service award to named plaintiff after three years of litigation).

Additionally, only three Class Members requested to be excluded from the Settlement. As such, this Court should approve the Class Action Settlement and allow distribution of the net Settlement proceeds to the Settlement Class Members.

## VII. CONCLUSION

The proposed Settlement provides an immediate, material, and fair resolution of this case. The Settlement was reached in an arm's-length negotiation after sufficient discovery. The Settlement treats all Class Members fairly and provides fair compensation to Class Counsel and the Class Representative for their work in delivering this Settlement to the Settlement Class. Adequate notice was given to the Settlement Class, no objections to the Settlement were received, and only three individuals excluded themselves from the Settlement. This Settlement strikes all the notes for a fair, adequate, and just outcome. Plaintiffs, therefore, respectfully request that the Court approve the Settlement in whole and without delay.

Dated: August 21, 2025

Respectfully submitted,

*/s/ Kate M. Baxter-Kauf*
Kate M. Baxter-Kauf (MN #0392037)
kmbaxter-kauf@locklaw.com
Karen Hanson Riebel (MN #0219770)
khriebel@locklaw.com
Maureen Kane Berg (MN # 033344X)
mkberg@locklaw.com
**LOCKRIDGE GRINDAL NAUEN PLLP**
100 Washington Avenue South, Suite 2200
Minneapolis, MN 55401
Tel.: (612) 339-6900
Fax: (612) 339-0981

*Interim Co-Lead Class Counsel*

Rachele R. Byrd (*pro hac vice*)
byrd@whafh.com
Alex Tramontano (*pro hac vice*)
tramontano@whafh.com
**WOLF HALDENSTEIN ADLER
FREEMAN & HERZ LLP**
750 B Street, Suite 1820
San Diego, CA 9211
Tel.: (619) 239-4599
Fax: (619) 234-4599
*Interim Co-Lead Class Counsel*

Maureen M. Brady (MO # 57800)
mbrady@mcshanebradylaw.com
**MCSHANE & BRADY, LLC**
1656 Washington, Ste. 120
Kansas City, MO 64108
Tel.: (816) 888-8010
Fax: (816) 332-6295
*Attorneys for Plaintiffs and the Putative Class*

Gayle M. Blatt (pro hac vice)
gmb@cglaw.com
P. Camille Guerra (pro hac vice)
camille@cglaw.com
**CASEY GERRY SCHENK FRANCAVILLA
BLATT, LLP**
110 Laurel Street
San Diego, CA 92101
Tel.: (619) 238-1811
Fax: (619) 544-9232
*Attorneys for Plaintiffs and the Putative Class*

M. Anderson Berry (*pro hac vice*)
aberry@justice4you.com
Gregory Haroutunian (*pro hac vice*)
gharoutunian@justice4you.com
**CLAYEO C. ARNOLD,
A PROFESSIONAL CORP.**
865 Howe Avenue
Sacramento, CA 95825
Tel.: (916) 239-4778
Fax: (916) 924-1829
*Attorneys for Plaintiffs and the Putative Class*

15

**CERTIFICATE OF SERVICE**

I hereby certify that on August 21, 2025, a true and correct copy of the foregoing was electronically filed with the Clerk of Court using CM/ECF. Copies of the foregoing document will be served upon interested counsel via transmission of Notices of Electronic Filing generated by CM/ECF.

/*s/ Kate M. Baxter-Kauf*
Kate M. Baxter-Kauf (MN #0392037)
**LOCKRIDGE GRINDAL NAUEN PLLP**
kmbaxter-kauf@locklaw.com
100 Washington Avenue South, Suite 2200
Minneapolis, MN 55401
Tel.: (612) 339-6900
Fax: (612) 339-0981

*Interim Co-Lead Class Counsel*
