IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION

| | |
|---|---|
| WILLIAM JOHNSON, JOSHUA KIRK, and TONI REYNOLDS, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>CORNERSTONE NATIONAL INSURANCE CO., *et al.*,<br><br>Defendants. | Case No. 22-04135-CV-C-BP |

### ORDER (1) GRANTING MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENT AND (2) GRANTING IN PART MOTION FOR AWARD OF ATTORNEYS' FEES, EXPENSES, AND SERVICE AWARDS

On March 14, 2025, the Court granted Plaintiffs' Consent Motion for Preliminary Approval of Class Action Settlement. (Doc. 156.) On July 7, 2025, Plaintiffs filed a Motion for Attorney Fees, Reimbursement of Expenses, and Service Awards, (the "Fee Motion"), and on August 21, 2025, they filed a Consent Motion for Final Approval. In accordance with the Court's Order and the Notices sent to class members, the Court conducted a hearing on September 25, 2025. Counsel for the parties appeared, but nobody else appeared. After considering the parties' filings and arguments, the Court (1) **GRANTS** the Motion for Final Approval, (Doc. 163), and (2) **GRANTS IN PART** the Fee Motion. (Doc. 160.)

### I. BACKGROUND

Defendant Cornerstone National Insurance Co. ("Cornerstone") sells automobile and homeowner insurance in multiple states around the country, and its policies are sold by independent agents. The agents can connect to Cornerstone's computer system, which enables

them to access drivers' license records (which is understandable given that Cornerstone sells automobile insurance).

In November 2021, Cornerstone learned one or more unauthorized parties had gained access to its system through some of its agents' accounts. It issued a "global password reset" and investigated the matter. Its investigation enabled it to identify the individuals affected by the data breach (some of whom were not Cornerstone's clients), and it sent notices to them advising that their driver's license numbers and other personal information may have been accessed without authorization.

Plaintiffs are three of the individuals notified by Cornerstone. Plaintiffs William Johnson and Joshua Kirk filed suit on September 14, 2022, and Plaintiff Toni Reynolds filed suit two days later. The cases were consolidated in March 2023, (Doc. 29),[1] and an Amended Complaint was filed in October 2023. In the Amended Complaint, Plaintiffs asserted federal and state claims against Cornerstone (and four other Defendants who were later dismissed) on behalf of themselves and (1) a nationwide class, (2) a subclass of people in California, and (3) a subclass of people in Tennessee. (*See* Doc. 114.)[2] In January 2025, Plaintiffs filed a Consent Motion seeking preliminary approval of a class action settlement (the "Settlement"). (Doc. 150.)

The Settlement proposed a class (hereafter the "Class") consisting of all "persons residing in the United States who were sent a notice by Cornerstone on or near August 4, 2022, that their [personal information] may have been compromised in the Unauthorized Data Disclosure." (Doc.

---

[1] The Order consolidating these cases was issued by the Honorable Willie J. Epps, Jr., United States Magistrate Judge for this District, to whom the cases were assigned at the time. The cases were transferred to the undersigned on February 23, 2024. (Doc. 91.)

[2] While the redacted Amended Complaint was filed in October 2023, (*see* Doc. 42), the Court refers to the unredacted version, which was not filed until April 2024.

150-2, p. 5, ¶ 6.)³ There were approximately 233,504 people in this class (hereafter, the "Class Members"). The Settlement called for a settlement fund of $525,000.00 from which the following sums would be deducted before any money was distributed to Class Members:

(1) Attorney fees, with Plaintiffs' counsel seeking 33.33% of the settlement fund;

(2) Plaintiffs' costs and expenses, estimated to be $15,000;

(3) Service Awards of $2,000 for each of the three named Plaintiffs; and

(4) The Claims Administrator's fee, which was estimated to be $145,657.

The remainder of the fund would be distributed *pro rata* among the Class Members who returned claim forms, with any amounts that could not be distributed forming a *cy pres* to be paid to Legal Aid of Western Missouri. Finally, the Settlement provided what Plaintiffs describe as injunctive relief, which the Court will discuss further below.

After conducting a telephone conference with the parties and issuing an Order to solicit additional information, the Court granted preliminary approval in March 2025, and as part of that approval the Court approved the delivery of Notices to Class Members. (Doc. 156.) Plaintiffs have now filed a Motion for Final Approval, and with that Motion Plaintiffs provided a declaration from the Claims Administrator, who reports it was able to establish addresses for, and send notices to, 233,169 class members. (Doc. 164-1, ¶ 4.) Some of those Notices were returned, and the Claims Administrator utilized additional methods for obtaining addresses. (Doc. 164-1, ¶ 7.) Following those efforts, it is believed that 230,908 (or approximately 99%) of the Class Members received notice of the Settlement. (Doc. 164-1, ¶¶ 7-8.) Finally, 10,908 valid claim forms (representing more than 4.6% of the class) were received. (Doc. 164-1, ¶ 12.)

---

³ All page numbers for documents filed with the Court are those generated by the Court's CM/ECF system and may not correspond to the document's pagination.

The Court has considered the materials submitted by the parties and the arguments presented at the hearing. As discussed more fully below, the Court believes the Settlement should be approved and the Fee Motion should be granted in part; during its discussion the Court may mention additional facts as necessary.

## II.  DISCUSSION

### A.  Certification and Approval of Settlement

A class can be certified if the prerequisites in Rule 23(a) of the Federal Rules of Civil Procedure are satisfied and the class qualifies under one of the provisions in Rule 23(b). There is little doubt that these requirements are satisfied, so only a brief discussion is necessary.

Rule 23(a) requires that (1) the Class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the Class Members; (3) the class representatives' claims are typical of the Class Members' claims, and (4) the class representatives (and their attorneys) will fairly and adequately represent the Class. The Court finds these requirements are satisfied. With respect to the first requirement, joinder of more than 230,000 individuals from across the country is not feasible. Moreover, individual suits are not practicable because the monetary value of any one Class Member's claim is very low. With respect to commonality, there are at least three facts in common for the Class Members: (1) the fact that their personal information was accessed through Cornerstone's system without proper authorization, (2) the nature of the information accessed without authorization, and (3) Cornerstone's actions and inactions leading to the data breach. The class representatives' claims are typical of the Class Members' claims, and the class representatives (and their attorneys) have adequately represented the Class's interests.

4

Case 2:22-cv-04135-BP   Document 167   Filed 09/29/25   Page 4 of 14

The parties proposed certification under Rule 23(b)(3), which requires that "the questions of law or fact common to class members predominate over any questions affecting only individual members and that a class action is superior to other available methods" for resolving the dispute. Any relevant individual questions (*e.g.*, issues related to valuing damages or ascertaining whether a particular class member had his or her information taken or used) are rendered non-factors by the Settlement's terms. The Court also finds that certifying the Class for purposes of settlement is superior to other methods of resolving the dispute, particularly given the small amounts of damage suffered by each Class Member.

Because the Court is certifying the Class for purposes of settlement, the Court must ensure the Settlement is not the product of fraud or collusion and that it is fair, adequate, and reasonable. *Keil v. Lopez*, 862 F.3d 685, 693 (8th Cir. 2017). This requires the Court to consider (1) the merits of the claims, weighed against the Settlement's terms, (2) Cornerstone's financial condition, (3) the complexity and expense of further litigation, and (4) the amount of opposition to the Settlement. *Id*. With respect to the first and third factors: Cornerstone did not file a Motion to Dismiss, and there was no other Motion related to the merits of Plaintiffs' claims against Cornerstone. However, other Defendants filed Motions to Dismiss; several claims were dismissed by the Court and the Court deferred ruling on others pending additional briefing by the parties. (Doc. 119.) The Court's rulings demonstrate the legal risk to Plaintiffs of continued litigation. Further, the damages at stake for any Plaintiff or Class Member are relatively small, making extensive litigation a risky proposition. Finally, there is no question regarding Cornerstone's ability to fund the settlement, and there have been no objections to the Settlement.

The Court also must consider the provisions of Rule 23(e)(2), which provides that a settlement binding absent class members can be approved only upon finding that the settlement is

"fair, reasonable, and adequate" after considering several factors. Not all the factors are relevant in this case; those that are include whether the class has been adequately represented, whether the settlement was negotiated at arm's length, the costs, risks and delay of trial, the effectiveness of the claims process, and the attorney fees requested. The Court finds that these factors (some of which were discussed above) favor approval of the Settlement. The Settlement was achieved at arms-length after several sessions with a mediator, the Honorable Jay Daugherty (formerly a Circuit Judge in Missouri state court). (*See* Doc. 150, p. 6.) The amount paid to Class Members who submitted claim forms is reasonable given the difficulties and risks of litigating the case to conclusion. Finally, the Court finds that the notice plan complied with both Rule 23 and the requirements of the Due Process Clause, as demonstrated by the fact that more than 99% of the Class Members received notice.

For these reasons, the Court finds that the requirements of Rule 23 have been met. The Court further finds that the Settlement is fair, adequate, and reasonable, and it should be approved.

## B.  Attorney Fees

When considering a fee request in a class action settlement, the Court may utilize either a lodestar approach or a percentage of the benefit approach. *E.g.*, *In re T-Mobile Customer Data Sec. Breach Litig.*, 111 F.4th 849, 858 (8th Cir. 2024) (hereafter "*T-Mobile*"). The lodestar approach considers the reasonable amount of hours billed by Class Counsel and the reasonable hourly rate; the percentage of the fund approach "permits an award of fees that is equal to some fraction of the common fund that the attorneys were successful in gathering during the course of the litigation." *Keil*, 862 F.3d at 701 (quotation omitted). The choice of which to use is discretionary. *E.g.*, *T-Mobile*, 111 F.4th at 858-59; *Keil*, 862 F.3d at 701.

Plaintiffs request that the Court award Class Counsel 33.33% of the fund, or $174.982.50, as attorney's fees. The Court will award a percentage of the fund as attorney fees but will consider the lodestar to evaluate the reasonableness of the percentage. *See T-Mobile*, 111 F.4th at 861 ("A lodestar crosscheck helps a court evaluate whether a percentage award would result in a windfall by comparing it to counsel's lodestar."); *Keil*, 862 F.3d at 701 (A District Court may, but is not required to, "verif[y] the reasonableness of its award by cross-checking it against the lodestar method."). Finally, as discussed below, there are additional factors the Court should consider.

### *1. The Lodestar as a Cross-Check*

As stated above, the lodestar is determined by multiplying a reasonable number of hours times a reasonable hourly rate. There is no need to calculate the lodestar with mathematical precision because the Court is not awarding the lodestar; it is only using the lodestar as a cross-check. Nonetheless, the lodestar calculation Class Counsel initially provided, (Doc. 160-2), is not based on a reasonable number of hours or reasonable hourly rates.

#### *(a). Reasonable Number of Hours*

Class Counsel represents that more than 650 hours were spent litigating this matter from the time the suits were filed until June 27, 2025. (*See* Doc. 160-1, ¶¶ 28-29.) However, Plaintiffs initially agreed to terms with Cornerstone on October 9, 2023. (*E.g.*, Doc. 137, ¶ 3; Doc. 141, p. 1; Doc. 146, ¶ 3.) Thereafter, Class Counsel's efforts focused on the four Defendants added in the Amended Complaint, and all four of those Defendants were eventually dismissed. Specifically:

1. James Insurance Agency was voluntarily dismissed by Plaintiffs before it filed an Answer or a Motion, and it was dismissed without prejudice. (Doc. 90; Doc. 99.)
2. Accredited Resource Insurance Agency was dismissed without prejudice when the Court granted its Motion to Dismiss for lack of personal jurisdiction. (Doc. 118.)

7

3. Reed-Williams Insurance Agency, Inc. and Guidewire Software, Inc. filed Motions to Dismiss. The Court (1) granted their motions in part and dismissed some counts for failure to state a claim and (2) directed the parties to file supplemental briefs with respect to the remaining claims. (Doc. 119.) The supplemental briefs were never filed. Instead, Plaintiffs voluntarily dismissed these two Defendants, and they were dismissed without prejudice. (Doc. 122; Doc. 129; Doc. 144; Doc. 145.)

In response to the Court's suggestion that the lodestar should consider time only through November 1, 2023, (because that was approximately the time Plaintiffs settled with Cornerstone, the only Defendant that was not dismissed), Class Counsel contended that all the time after that date should be included in the lodestar because their efforts "advanced the interests of the Class and materially improved the settlement" by increasing the settlement fund from $425,000 to $525,000. (Doc. 162, ¶¶ 4-5.) Class Counsel did not explain what they did to increase the settlement fund; but, at the settlement hearing, Cornerstone's attorney explained that Cornerstone agreed to pay an additional $100,000 in exchange for Plaintiffs' agreement to forgo continuing their pursuit of claims against the four other Defendants. (*See also* Doc. 150-2, ¶ 28 (Settlement Agreement's definition of "Released Persons").)

The Court does not believe the attorney time from November 1, 2023, to June 27, 2025, should be included in the lodestar. Information supplied by Class Counsel demonstrates approximately 276 hours were spent on this case through November 1, 2023, (*see* Doc. 162, ¶ 11), which means 374 hours were spent on the case after that date—and as noted, none of it was spent on successful claims. While the pursuit (and possibility of continued pursuit) of unsuccessful claims may have persuaded Cornerstone to pay an additional $100,000 to end the litigation, the Court does not believe it is reasonable to include that time in the lodestar.

Plaintiffs settled with, and stopped litigating against, Cornerstone by November 1, 2023. The lodestar should not consider efforts devoted to unsuccessfully litigating against other Defendants. While some work on the settlement may have occurred after that date, Class Counsel provides no basis for determining how much time should be attributed to that effort. Moreover, some work to pursue claims against Defendants who were ultimately dismissed (such as preparation of the Amended Complaint) was performed before November 1, 2023, and would be subtracted from a properly calculated lodestar. Accordingly—and given that the lodestar is being used solely as a cross-check and need not be determined with precision—the Court concludes the lodestar should consider only hours devoted to the case before November 1, 2023.

The Court was not provided with the means to evaluate whether the number of hours reported by Class Counsel for the relevant time frame (which rounds to 276 hours) is reasonable. The figure seems high, particularly given that Cornerstone never filed any dispositive motions and the Docket Sheet reflects that little discovery was conducted before the Settlement was reached. Nonetheless, the Court will utilize this figure for the cross-check (while keeping in mind that the figure is probably high).

### (b). *Reasonable Hourly Rates*

The Fee Motion includes the hourly rates Class Counsel used to calculate the lodestar. Most of the attorneys' hourly rates exceed $800/hour, and most of the time was attributed to attorneys with those rates. (Doc. 160-2.) In response to the Court's request for the lodestar through November 1, 2023, Class Counsel provided information about the total amount of time and total amount that would have been billed by each law firm working on the case but did not specify this information on an attorney-by-attorney basis. (Doc. 162, ¶ 11.) However, based on the information provided, the Court can calculate the hourly rates Class Counsel utilized:

| Firm | Hours | Fees | Hourly Rate (rounded) |
|---|---|---|---|
| Lockridge Grindel | 128.07 | $126,920.50 | $991.02 |
| Wolf Haldenstein | 16.1 | $ 11,619.50 | $721.71 |
| McShane & Brady | 6.6 | $ 5,280.00 | $800.00 |
| Casey Gerry | 79.1 | $ 53,905.50 | $681.49 |
| Caleo C. Arnold | 46.1 | $ 28,555.20 | $619.42 |
|  | 275.97 | $226,280.70 | $819.95 |

"When determining reasonable hourly rates, district courts may rely on their own experience and knowledge of prevailing market rates." *Brewington v. Keener*, 902 F.3d 796, 805 (8th Cir. 2018) (quotation omitted). Based on its experience the Court concludes an hourly rate of $820/hour for the work done in this case is excessive.[4] In addition to its experience with other fee requests, the Court has also considered (1) the nature of the claims asserted, (2) the fact that Class Counsel did not devote any time to opposing Cornerstone's motions, (3) the fact that Class Counsel did not file any motions that were contested by Cornerstone, (4) the relatively early stage at which the claims against Cornerstone were settled, and (5) the fact that the $820/hour average rate necessarily incorporates a higher rate for the attorneys, given that paralegals performed at least some of the work at a lower hourly rate. And significantly, Plaintiffs provide nothing to demonstrate the requested rates are reasonable or explain why premium rates are justified.

For the cross-check, the Court will utilize an hourly rate of $650/hour. The Court believes this figure is still high, but it is closer to a proper figure than what Class Counsel proposes and (as stated earlier) the Court need not calculate the lodestar precisely.

---

[4] While neither scientific nor authoritative, in November 2023 Missouri Lawyer's Weekly reported the results of a survey indicating that, statewide, hourly rates in Missouri were: $450/hour for partners, $293/hour for associates, and $350 for other attorneys "such as counsel or lawyers whose titles weren't apparent from firm websites or court filings." Those rates were slightly higher in Kansas City and St. Louis. (https://molawyersmedia.com/2023/11/08/welcome-to-billing-rates-2023/ (last visited Sept. 12, 2025).)

## 2. Other Considerations

"After calculating a fee award using either the lodestar method or the percentage-of-the-fund method, district courts generally evaluate the ultimate reasonableness of the award by considering relevant factors from the twelve factors listed" in the Fifth Circuit's decision in *Johnson v. Georgia Highway Express, Inc.*[5] *League of Women Voters of Missouri v. Ashcroft*, 5 F.4th 937, 941 (8th Cir. 2021) (cleaned up). Most of those factors are subsumed within the lodestar analysis (such as the time and labor required and the experience, reputation and ability of the attorneys). However, some of the factors relevant to this case include (1) the novelty and difficulty of the questions, (2) the amount of money involved, and (3) the results obtained. Here, the issues related to Cornerstone—at least, those that were actually litigated—do not appear particularly novel or difficult. The amount of money involved is relatively small, as reflected by the amount of the Settlement.

Class Counsel has attempted to bolster the fee request by referring to what has been described as injunctive relief. (*E.g.*, Doc. 150, p. 15; Doc. 155, p. 2.) While the Court can consider "the value of the injunctive relief obtained as a 'relevant circumstance' in determining what percentage of the common fund class counsel should receive as attorneys' fees," *Staton v. Boeing Co.*, 327 F.3d 938, 974 (9th Cir. 2003), the Court does not believe the injunctive relief provides much value to the class.

Under a heading entitled "Equitable Relief," the Settlement requires Cornerstone to provide Class Counsel with

> a written sworn statement that it has implemented improvements, and planned for future implementations, to improve its cybersecurity since the [data breach], including password resets for all agent accounts and shall continue in its efforts to improve its cybersecurity. These efforts include implementing additional technical safeguards including additional spam filters, firewalls and antivirus software

---

[5] 488 F.2d 714 (5th Cir. 1974).

11

Case 2:22-cv-04135-BP   Document 167   Filed 09/29/25   Page 11 of 14

> system-wide, as well as providing additional staff and agent training on identifying unauthorized access. Cornerstone will also attest it has increased password complexity, masked all [personal information] including driver's license numbers on its user interfaces, bolstered its firewall and antivirus capabilities, and implemented email encryption and antispam services.

(Doc. 150-2, p. 10, ¶ 38(b).)[6] Upon inquiry from the Court asking how this benefits the Class, (*see* Doc. 154, p. 2), Class Counsel explained that the Settlement requires Cornerstone "to make specific improvements to its data security," listed some changes, and concluded by advising that Cornerstone had "implemented these changes to respond to the ever-changing cyber-threat environment." (Doc. 155, p. 2.) However (and as confirmed by Cornerstone's counsel at the hearing), some of the changes were implemented before this case was filed (such as the password reset, which it instituted upon learning of the data breach), and most (if not all) other changes were instituted, or would have been instituted, regardless of this lawsuit. Steps Cornerstone took (or would have taken) regardless of the lawsuit cannot be regarded as benefits to the Class procured by Class Counsel's efforts.

Finally, the Settlement does not truly implement injunctive relief, in that it does not require Cornerstone to take specific action or impose any standards the Court can enforce. For instance, the Settlement requires Cornerstone to provide Class Counsel with a sworn statement confirming it has "planned for future implementations" which shall include "additional technical safeguards" such as "additional spam filters"—but approving the Settlement will not require Cornerstone to make any specific changes or empower the Court to review Cornerstone's conduct to make sure it implements them. At best, Cornerstone is required to supply a sworn promise to make changes, but the Settlement does not obligate them to actually make those changes.

---

[6] Another provision under that heading requires Cornerstone to supply Class Counsel with "post-September 1, 2024, non-confidential statements reflecting [its] financial position," (Doc. 15-2, p. 10, ¶ 38(a)), but Class Counsel does not suggest this benefits the Class (nor do they explain how it does).

The Court is not suggesting the results obtained were insufficient. The Court's point is that nothing about the case or the Settlement—including the injunctive relief—justifies a fee award at the high end of the permissible range.

### 3. *Conclusion Regarding Fees*

Class Counsel requests that the Court award 33.33% of the fund as attorney fees, resulting in an award of $174.982.50. However, the lodestar cross-check is $179,400—and as explained earlier, that calculation utilizes a number of hours and an hourly rate that the Court believes are greater than what would be reasonable. A proper lodestar would be less than this figure—and less than 33.33% of the fund. Moreover, there is no justification for an award at the high end of the permissible range.

Accordingly, while the Court will award Class Counsel a percentage of the fund for attorney fees, the percentage will be 25%. Thus, $131,250 of the fund will be paid to Class Counsel out of the settlement fund.

### C. Other Payments From the Fund

Plaintiffs request approval of additional payments from the fund before the proceeds are paid to the Class Members who submitted claim forms. The Court approves these requests as follows:

| | |
|---|---|
| $   6,000.00 | Service Awards ($2,000 for each of the three named Plaintiffs) |
| $  11,134.96 | Class Counsel's Costs |
| $151,642.00 | Claims Administrator's Fee |

### III. CONCLUSION

The Motion for Final Approval of Class Action Settlement, (Doc. 163), is **GRANTED**. Further, the Motion for Attorney Fees, Reimbursement of Expenses, and Service Awards, (Doc. 160), is **GRANTED IN PART**.

The Court approves payment from the settlement fund of (1) $131,250 for attorney fees, (2) $6,000 for service awards, (3) $11,134.96 for Class Counsel's costs, and (4) $151,642 to pay the Settlement Administrator. The remaining $224,973.04 shall be distributed pro rata to the Class Members who returned claim forms, in the manner set forth in the Settlement Agreement. Relatedly, the parties are directed to perform their obligations under the Settlement Agreement.

Finally, the case is dismissed with prejudice, without the payment of costs or fees except as set forth in this Order. With this dismissal, the Released Claims and all the claims described in the Settlement Agreement are released against Cornerstone and the Released Parties.[7] This release does not extend to the claims of Class Members who opted out of the Settlement; namely,

> Barbara Franklin
> Douglas Gardner
> Luz Salas
> Warren Scheinin
> Lisa Scheinin

These five individuals' claims are not released.[8]

**IT IS SO ORDERED.**

/s/ Beth Phillips
BETH PHILLIPS, CHIEF JUDGE
DATE: September 29, 2025            UNITED STATES DISTRICT COURT

---

[7] The capitalized terms in this sentence are defined in the Settlement Agreement.

[8] Warren Scheinen and Lisa Scheinin returned timely opt outs that were deemed invalid because they were "submitted via email with no attachments and didn't provide a signature as required." (Doc. 164-1, ¶ 14.) Nonetheless—and with no objection from the parties—the Court excuses their technical non-compliance and excludes them from the Class.